**UNITED STATES of America, Plaintiff,**

**v.**

**CITY OF GIRARD, Defendant.**

**No. 91–3109.**

United States District Court,
C.D. Illinois,
Springfield Division.

Nov. 4, 1992.

James A. Lewis, Asst. U.S. Atty., Springfield, Ill., for plaintiff.

Mike Southworth, Springfield, Ill., for defendant.

## OPINION

RICHARD MILLS, District Judge:

Bench trial.

Posit: was the city properly requested to graduate to private financing of a loan to upgrade its sewer system?

Yes.

Judgment for the United States.

## I. FACTS

In 1980, the City of Girard, Illinois, was mandated by the Illinois Environmental Protection Agency to make improvements to its sewage treatment facility at a cost of $3,800,000. Construction costs were financed in part by revenue bonds issued by Girard and bought by the Farmers Home Administration (FmHA), in the original principal amount of $950,000 and maturing in 40 years.

The resolution adopted by Girard authorizing the issuance of the bonds included the following provision:

NOW THEREFORE, in consideration of the premises the association [Girard] hereby resolves: ....

To refinance the unpaid balance, in whole or in part, of its bonds upon the request of the Government if at any time it shall appear to the Government that the association is able to refinance its bonds by obtaining a loan for such purposes from responsible cooperative or private sources at reasonable rates and terms for loans for similar purposes and periods of time as required by section 333(c) of said Consolidated Farm and Rural Development Act.

In other words, Girard's resolution provided for loan graduation to private credit in accordance with 7 U.S.C. § 1983(c).

In 1986, the FmHA's district office reviewed Girard's file to determine whether it should be required to graduate to private credit. Assistant District Director Robert Maschhoff, who was the most familiar with the Girard's case, concluded that the City's bonds should not be graduated. Likewise, after completing both an initial screening and thorough review, District Director Henry Flitz also concluded that Girard should not be required to graduate and he eliminated the city from the graduation review list.

Despite the District Office's elimination of Girard from the graduation review list, an FmHA Loan Specialist Charles Specht with the State Office continued the graduation review of Girard's bonds. He asked eleven underwriters whether they might be interested in refinancing Girard's bonds and three replied that they were. Consequently, Mr. Specht wrote a letter notifying Girard that its bonds had been selected for graduation which he tendered to Director Flitz. On March 17, 1987, Director Flitz sent the letter to the City. At that time, Girard's bonds had $910,000 in principal outstanding, bore interest at the rate of 5% per annum, matured in 34 years.

After receiving the graduation notification, Girard engaged bond counsel to determine the availability of conventional financing. Counsel solicited proposals from 17 bond underwriters concerning Girard's bonds. Based on the proposals submitted, the City concluded that the interest rates on refunding its bonds would be in excess of more than 50% over the 5% interest rate on the bonds and would result in an increase of sewer user fees upwards of 33%. The City retained an underwriter, Michael Belsky, who projected sewer rates would have to be increased up to 33% depending on the new loan's terms. Girard's certified public accountant advised the City that refinancing the bonds was not a realistic possibility at the time. In addition, Girard's citizens protested graduation. Consequently, the City concluded that graduation was

not feasible because conventional credit at reasonable rates and terms was unavailable.

On May 15, 1987, FmHA notified Girard and other communities that it was making a Discount Purchase Program available by which communities could refinance their FmHA loans at substantial discounts of up to 40% off of the face of the loan. The City tried to participate in this program but was refused pursuant to governmental policy since it had received a graduation notice fifty-eight days earlier.

On June 1, 1988, Girard participated in an informal appeal of the FmHA's decision to graduate. At the meeting, State. Director Robert Chambers stated that the City had been asked to graduate because it had been offered the opportunity to participate in the Discount Purchase Program and declined. Although Director Chambers was informed that Girard never received an opportunity to participate in the Discount Purchase Program due to the earlier graduation request, the FmHA nevertheless refused to reverse its decision to require graduation.

Despite the FmHA's decision, Girard did not apply for and accept private credit. Consequently, the Government filed suit to force the City to comply with the graduation requirement. The City counterclaimed that it was wrongfully deprived of an opportunity to participate in the Discount Purchase Program. A bench trial followed.

## II. ANALYSIS

The United States Department of Agriculture, through the FmHA, provides community loans which are meant to be temporary sources of credit. 7 C.F.R. § 1951.-261(a)(i). Accordingly, FmHA loans have a statutory graduation requirement as follows:

> except for guaranteed loans, an agreement by the borrower that if at any time it shall appear to the Secretary that the borrower may be able to obtain a loan from a ... private credit source ... at reasonable rates and terms for loans for similar purposes and periods of time, the borrower will, upon request by the Secretary, apply for and accept such loan in sufficient amount to repay the Secretary or the insured lender, or both, and to pay any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

7 U.S.C. § 1983(c). Reasonable rates and terms is defined as "[t]hose commercial rates and terms which borrowers are expected to meet when borrowing for similar purposes and similar periods of time. The 'similar periods of time' of available commercial loans will be measured against, but need not be the same as, the remaining or original term of the FmHA loan." 7 C.F.R. § 1951.252(d).

The State Director is "responsible for ... [m]onitoring the orderly and timely review of the graduation procedures and to assure the provisions of this subpart are complied with...." 7 C.F.R. § 1951.254(a)(1). The State Director, or his or her delegate, is authorized to perform " ... all acts necessary in connection with ... servicing loans" within his or her jurisdiction. 7 C.F.R. § 1900.2. "The District Director is responsible for ... [g]raduation review and follow-up on all Community Program ... borrowers." 7 C.F.R. § 1951.254(b)(3).

The initial screening of the graduation review list is performed by the servicing official. 7 C.F.R. § 1951.261(d). "In selecting borrowers who will be required to graduate, the servicing official will give full consideration to the financial strength, income capability, and debtor characteristics which appear to meet lender criteria." 7 C.F.R. § 1951.261(g). Any decision reached by the servicing official during the screening process will be documented on the review list. 7 C.F.R. § 1951.261(d). Any borrowers who are not eliminated from the graduation review list by the initial screening will receive a thorough review of the financial information contained in their files. 7 C.F.R. § 1951.261(e). The thorough review will eliminate those borrowers who are unable to meet the established minimum lending criteria and they will be handled in the same manner as those borrowers eliminated during the ini-

tial screening. 7 C.F.R. § 1951.261(e)(4), and (e)(5).

The City contends that the FmHA violated its own regulations because the State Director ordered it to graduate despite the fact that the District Director concluded that it should be eliminated from the graduation review list. Girard notes that no loan graduations took place for approximately 25 years prior to 1986. However, on July 10, 1986, a few days after Director Flitz notified the State Office that Girard's bonds would not be graduated, graduation goals of 5 community loans were established for Loan Specialist Charles Specht. On December 16, 1986, the goal was increased to 26 graduations. Consequently, the City asserts that its graduation was the result of the arbitrary and capricious reason of meeting graduation goals. Furthermore, Girard was unable to find private credit at reasonable rates and terms; therefore, under the law, it should not be required to graduate.

The Government contends that nothing in the regulations supports the assertion that District Directors have exclusive authority to determine which borrowers should be required to graduate. Also, the Government stresses that a FmHA loan is a temporary source of credit. Consequently, graduation does not turn on whether private financing is available at the same rate as FmHA loans; rather, the generally prevailing market rate, which will be above the FmHA rate, is used to determine whether private financing is available at a reasonable rate. Finally, the Government argues that Girard's counterclaim should fail because under the law, the City could not participate in the Discount Purchase Program because it was requested to graduate.

■ First, we must determine whether the State Director had the authority to request the City of Girard to graduate to private credit. If the Court accepts the City's argument, it is essentially ruling that the State Director has no authority to graduate loans unless the District Office first recommends graduation. In other words, this Court would be holding that

District Directors have exclusive authority to order graduation because their initial decisions, in accordance with the regulations, are binding on all FmHA officials, including the State Director. In view of the federal regulations which establish that the State Director has the responsibility for monitoring graduation procedures and may delegate acts necessary to the servicing of loans, this Court cannot reach such a result.

■ Likewise, this Court cannot hold that Girard should not graduate its loans because the State Director requested graduation in order to meet his graduation goals. As long as the City's file conformed to graduation guidelines, the State Director's motivation for examining Girard's file is irrelevant.

■ Second, having established that the FmHA did not violate its regulations concerning loan graduation, we must decide whether the City's conclusion that it could not obtain a reasonable rate was proper. If a borrower can obtain a loan at market rates, "[t]he failure to do so at the request of the government [is] a breach of the agreement...." *United States v. Anderson,* 542 F.2d 516, 517 (9th Cir.1976).

In this case, the City could have obtained refinancing of its loans at the market rate which, of course, was not as attractive as the FmHA rate. The Court sympathizes with the City argument that refinancing the loan at market rates will result in a nearly doubled interest rate, and an increase in the sewer rates for its residents for the first time in several years. However, as previously noted, the FmHA loan was intended to be a *temporary* source of credit to get the City over the high market period until private financing was available at lower rates. Consequently, this Court finds that despite the added hardships of graduation, Girard was able to obtain private financing at reasonable rates and terms. Accordingly, it breached it loan agreement with the FmHA by failing to graduate as requested.

### III. CONCLUSION

Because the FmHA properly requested the City of Girard to graduate to private credit on March 17, 1987, it was precluded under government policy from taking advantage of the Discount Purchase Program. Therefore, the City's counterclaim for an order allowing it to participate in the program must fail.

*Ergo,* the City of Girard is ordered to graduate to private credit.

The City's counterclaim is DENIED.